United States Court of Appeals
Fifth Circuit

# UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

**FILED**
July 29, 2011

Lyle W. Cayce
Clerk

No. 10-70027

D.C. Docket No. 1:07-CV-66

QUINTEZ WREN HODGES,

    Petitioner - Appellee

v.

CHRISTOPHER B EPPS, COMMISSIONER, MISSISSIPPI DEPARTMENT OF CORRECTIONS,

    Respondent - Appellant

Appeal from the United States District Court for the
Northern District of Mississippi, Aberdeen

Before KING, BENAVIDES, and ELROD, Circuit Judges.

## JUDGMENT

    This cause was considered on the record on appeal and the briefs on file.

    It is ordered and adjudged that the judgment of the District Court is affirmed.

ISSUED AS MANDATE: 2 2 AUG 2011

FILED AUG 23 2011
DAVID CREWS, CLERK
BY_____ Deputy

A True Copy
Attest

Clerk, U.S. Court of Appeals, Fifth Circuit
By:_____
    Deputy

New Orleans, Louisiana   2 2 AUG 2011

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
July 29, 2011

No. 10-70027

Lyle W. Cayce
Clerk

QUINTEZ WREN HODGES,

Petitioner - Appellee

v.

CHRISTOPHER B EPPS, COMMISSIONER,
MISSISSIPPI DEPARTMENT OF CORRECTIONS,

Respondent - Appellant

FILED
AUG 23 2011
DAVID CREWS, CLERK
BY _____ Deputy

Appeal from the United States District Court
for the Northern District of Mississippi

Before KING, BENAVIDES, and ELROD, Circuit Judges.

FORTUNATO P. BENAVIDES, Circuit Judge:

Petitioner-Appellee Quintez Wren Hodges ("Hodges"), convicted of capital murder and kidnapping in Mississippi and sentenced to death and twenty years in prison, respectively, filed a petition for federal habeas relief in district court. The district court granted habeas relief with respect to the sentencing phase of trial, ruling that the sentencing instructions incorrectly informed the jurors that Hodges would be eligible for parole in violation of the Due Process Clause of the Fourteenth Amendment. The State has appealed. We agree with the district court that the erroneous sentencing instructions violated Hodges's due process

rights.[1] Further, we hold that the Mississippi Supreme Court's ruling that the error was harmless is unreasonable. We therefore AFFIRM the district court's grant of relief with respect to Hodges's sentence and AFFIRM the district court's resentencing order.

I.  BACKGROUND

On July 20, 1999, Hodges, who was armed with a gun, broke into the home of his former girlfriend, Cora Johnson, in Lowndes County, Mississippi. *Hodges v. State*, 949 So. 2d 706, 712 (Miss. 2006). Upon entering the home, he encountered Cora's brother, Isaac Johnson. *Id.* Hodges fatally shot Isaac, and kidnapped Cora and her baby girl. *Id.* Hodges then drove Cora and her child to Alabama. *Id.* Cora testified that after they arrived in Alabama, Hodges raped her in the back seat of the vehicle. *Id.* Afterward, Hodges returned Cora and her daughter to her mother's house and "turned himself in to the police." *Id.*

On November 8, 1999, a Lowndes County, Mississippi grand jury returned an indictment that charged Hodges with the capital murder of Isaac Johnson during the commission of a burglary. MISS. CODE ANN. § 97-3-19(2)(e). Additionally, Hodges was charged with kidnapping Cora Johnson. A jury found Hodges guilty as charged. After a sentencing hearing conducted pursuant to § 99-19-101, the jury unanimously found that Hodges should receive the death penalty. The trial court sentenced Hodges to death by lethal injection. The court also sentenced Hodges to a term of twenty years for the kidnapping conviction.

---

[1] The district court also granted relief as to the sentencing phase on the following two claims (1) counsel rendered ineffective assistance during the sentencing phase of trial in violation of the Sixth Amendment; and (2) the prosecution knowingly introduced false testimony in violation of the Due Process Clause of the Fourteenth Amendment. Because we affirm the district court's grant of habeas relief with respect to the jury instructions, we need not reach these two claims.

2

No. 10-70027

On direct appeal, Hodges argued, among many other things, that the sentencing instructions violated his due process rights by incorrectly informing the jurors that he could be sentenced to life with the possibility of parole. The Mississippi Supreme Court ruled that the claim was procedurally barred and, in the alternative, rejected the claim on the merits, affirming Hodges's convictions and sentences. *Hodges v. State*, 912 So. 2d 730, 770 (Miss.), *cert. denied*, 546 U.S. 1037 (2005). Hodges applied for state post-conviction relief, again raising a due process violation based on the erroneous sentencing instructions. The Mississippi Supreme Court stated that the claim was barred by res judicata and quoted an excerpt from its previous opinion discussing the merits of the claim. *Hodges v. State,* 949 So. 2d 706, 722-23 (Miss. 2006), *cert. denied*, 522 U.S. 1061 (2007). The state court did not mention the procedural bar it had imposed on Hodges's direct appeal.

Hodges subsequently filed a federal petition for writ of habeas corpus, challenging both his conviction and his death sentence. Hodges raised many claims, including the due process challenge to the erroneous sentencing instructions. After holding an evidentiary hearing, the district court denied relief with respect to the claims challenging Hodges's conviction and granted habeas relief with respect to the sentencing portion of trial, holding that the erroneous sentencing instructions violated his due process rights. The State now appeals.

II. PAROLE INSTRUCTIONS

The State appeals the district court's ruling that the sentencing instructions incorrectly informed the jury that he would be eligible for parole in violation of the Due Process Clause of the Fourteenth Amendment. Hodges filed his 28 U.S.C. § 2254 petition for a writ of habeas corpus after the effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). The petition, therefore, is subject to AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). Pursuant to the federal habeas statute, as amended by AEDPA, a federal court

3

may not grant habeas relief to any claim that was "adjudicated on the merits" in state court unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court based on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 404-08 (2000). A state court's decision constitutes an unreasonable application of clearly established federal law if it is "objectively unreasonable." *Id.* at 409. Further, pursuant to section 2254(e)(1), state court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001).

A.  Procedural Bar

The State first contends that the Mississippi Supreme Court held that this due process claim was procedurally barred based on an adequate state law ground. On direct appeal, the Mississippi Supreme Court first found that because counsel failed to object to the erroneous parole instructions, the claim was procedurally barred. *Hodges*, 912 So. 2d at 770. The Court then alternatively considered the merits of the claim and held that Hodges "was not entitled to an instruction regarding his ineligibility for parole because he was not a habitual offender" under Mississippi law. *Id.* The Court further found that the erroneous instruction that the court would sentence Hodges to life with parole if the jurors failed to agree on a sentence was harmless error. *Id.* at 772. During the state habeas proceedings, Hodges again challenged the erroneous parole instructions. This time, the Mississippi Supreme Court did not mention

4

No. 10-70027

a procedural bar; instead, it quoted extensively from the merits discussion in its earlier opinion on direct appeal denying relief. *Hodges,* 949 So. 2d at 722-23. We read the opinion as reaching the merits of the due process claim by adopting or endorsing its analysis on the merits from its prior opinion.[2] After the quoted language from its previous opinion, the Court stated simply that the claim was "barred by res judicata." *Id.* at 723.

The State contends that the claim is procedurally barred, mistakenly relying upon precedent that recognizes that a state court may impose a valid procedural bar and, in the alternative, reach the merits of the federal claim. *Harris v. Reed,* 489 U.S. 255, 264 n.10 (1989). Although the Mississippi Supreme Court did just that in its opinion on Hodges's direct appeal, that is not what occurred when the court reached the claim during state habeas proceedings. The federal district court thus found there was no procedural bar "[b]ecause the Mississippi Supreme Court held the issue barred by res judicata while citing its merits discussion and not its previous finding of default." We agree with the district court that there is no procedural bar to the instant claim. The Mississippi Supreme Court did impose a procedural bar on direct appeal. "State procedural bars are not immortal, however; they may expire because of later actions by state courts. If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available." *Ylst v. Nunnemaker,* 501 U.S. 797, 801 (1991). Here, during state habeas proceedings, the last time the Mississippi Supreme Court was presented with the instant claim, it addressed the merits of the claim without mentioning the procedural bar. *Hodges,* 949 So.2d at 722-23. The court also stated that the claim was barred by res judicata.

---

[2] To the extent that it can be argued that the opinion is ambiguous as to whether the state court is adopting the analysis on the merits from its previous opinion, such ambiguity does not prevent our review of the claim. *Arizona v. Evans,* 514 U.S. 1, 9 (1995).

5

*Id.* at 723. However, "[w]hen a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review." *Cone v. Bell,* 129 S. Ct. 1769, 1781 (2009).³ Accordingly, the last time the state court addressed the instant claim it addressed the claim on the merits without mentioning the procedural bar, thereby removing the previously imposed procedural bar. *Ylst*, 501 U.S. at 801.

        B.     Merits of Due Process Claim

In the alternative, the State argues that the improper parole instructions constituted harmless error and thus the state court's decision was not an unreasonable determination of facts or an unreasonable application of clearly established law. At the conclusion of the sentencing hearing, the trial court instructed the jury that it could sentence Hodges to: (1) death; (2) life imprisonment without the possibility of parole; or (3) life imprisonment with the possibility of parole. Section 99-19-101 of the Mississippi Code does set forth those three sentencing options. Nevertheless, § 47-7-3(f) provides that "[n]o person shall be eligible for parole who is charged, tried, convicted and sentenced to life imprisonment under the provisions of Section 99-19-101." Thus, "in reality a life sentence imposed after June 30, 1995, automatically means life without parole because . . . § 47–7–3(1)(f) . . . was amended effective June 30, 1995, to provide that no person shall be eligible for parole who is charged, tried, convicted and sentenced to life imprisonment" for a capital offense. *Barnes v. State*, 763 So. 2d 216, 223 (Miss. App. 2000). Because Hodges's sentence was imposed after June 30, 1995, he is not eligible for parole under Mississippi law.

---

³ We note that if the Mississippi Supreme Court had not addressed the merits and instead had simply stated that the claim was barred by res judicata, the procedural bar imposed on direct appeal would have remained in place. *Cone*, 129 S. Ct. at 1781 (explaining that when a state court declines to reach a claim because the claim has previously been adjudicated, a "pre-existing procedural default" is not lifted).

In any event, it is undisputed that the state trial court erroneously instructed the jury that there was a third sentencing option of life *with* the possibility of parole. It is also undisputed that the court erroneously instructed the jurors that if they could not unanimously agree on punishment, then the court "must sentence the Defendant to a term of life imprisonment with the possibility of parole."

In *Simmons v. South Carolina*, in a plurality opinion, Justice Blackmun opined that "if the State rests its case for imposing the death penalty at least in part on the premise that the defendant will be dangerous in the future, the fact that the alternative sentence to death is life without parole will necessarily undercut the State's argument regarding the threat the defendant poses to society." *Simmons*, 512 U.S. 168-69. Further, "[b]ecause truthful information of parole ineligibility allows the defendant to 'deny or explain' the showing of future dangerousness, due process plainly requires that he be allowed to bring it to the jury's attention." *Id.* at 169. Justice O'Connor concurred in the judgment and wrote the controlling opinion,[4] which provided that:

> When the State seeks to show the defendant's future dangerousness, however, the fact that he will never be released from prison will often be the only way that a violent criminal can successfully rebut the State's case. I agree with the Court that in such a case the defendant should be allowed to bring his parole ineligibility to the jury's attention-by way of argument by defense counsel or an instruction from the court-as a means of responding to the State's showing of future dangerousness.

*Id.* at 169-70.

In the case at bar, the State understandably does not challenge the district court's ruling that it relied on Hodges's future dangerousness in arguing for the death penalty. Nor does the State challenge the district court's ruling that

---

[4] *Holland v. Anderson*, 583 F.3d 267, 281 (5th Cir. 2009).

Hodges was entitled to have the jury instructed that he would be ineligible for parole if he was sentenced to life in prison—either by the jury or the trial judge if the jury could not reach a unanimous verdict. However, the State does argue that the Mississippi Supreme Court's holding of harmless error was not unreasonable. Accordingly, we must determine whether the "flaw in the instructions 'had substantial and injurious effect or influence in determining the jury's verdict.'" *See Hedgpeth v. Pulido*, __ U.S. __, 129 S. Ct. 530, 530–31 (2008) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)). Applying this standard of review, Hodges "should prevail [if] the record is 'so evenly balanced that a conscientious judge is in grave doubt as to the harmlessness of the error.'" *Robertson v. Cain*, 324 F.3d 297, 305 (5th Cir. 2003) (quoting *O'Neal v. McAninch,* 513 U.S. 432, 436 (1995)).

There were two errors in the sentencing charge. The first error was that the court instructed the jury that it could sentence Hodges to life with parole. As previously set forth, Mississippi law does not allow a person convicted of capital murder to become eligible for parole. Although the jury was wrongfully instructed that it could choose a sentence of life with parole, the jury still had the option of choosing life without parole. Thus, despite knowing it could sentence him to life without parole, the jury chose the more severe option of a death sentence.[5] Under these circumstances, Hodges was not precluded from arguing to the jury that he would not be a future danger to society because he could not be paroled. We conclude that the Mississippi Supreme Court's holding that this error was harmless is not unreasonable because the instructions informed the jury it could sentence him to life without parole, and the jury nonetheless sentenced Hodges to death. Accordingly, we do not find that the

---

[5] Because the State only argues that the error was harmless, we assume for purposes of this appeal that this error violated Hodges's due process rights.

first error had substantial and injurious effect or influence on the jury's verdict.

The second error was that the court improperly instructed the jurors that if they could not unanimously agree on punishment, then the court "must sentence the Defendant to a term of life imprisonment *with* the possibility of parole." (emphasis added). There is no dispute that Hodges was not entitled to parole. As stated by the district court, this "Court cannot know whether at least one juror, despite a desire to vote for a sentence of life imprisonment without parole, voted to impose a sentence of death to prevent a hung jury, and thus, Petitioner's potential release into society." Op. at 33. The district court noted that the error was exacerbated by the prosecutor's closing argument in which he referred to the incorrect sentencing option of life with parole.

As previously set forth, a prosecutor's argument that a defendant will be a future danger can be rebutted if a defendant is not eligible for parole. *Simmons*, 512 U.S. 169-70. To determine whether the erroneous instruction had substantial and injurious effect or influence on the jury's verdict, we now turn to examine the prosecutor's closing argument regarding Hodges's future dangerousness to society. During argument to the jury, the prosecutor listed the sentencing options, including the sentence of life with parole. He further stated to the jury that if it was unable to "unanimously reach a verdict because any of those verdicts you reach must be unanimous, then you are to return that to the Court and state that you're unable to reach a verdict and at that point in time the Court will sentence him to life with parole."[6] The court below correctly noted that the prosecutor's closing argument emphasized or exacerbated the error.

---

[6] Indeed, defense counsel reiterated that there were three sentencing options, including a sentence of life with parole. Defense counsel also stated to the jury that: "If you don't feel that the death penalty is what this man deserves, then give him one of the other two options."

9

The prosecutor also reminded the jury that Hodges had escaped from jail twice. This Court has recognized that repeated escapes from custody constitute evidence that a defendant would be a future danger. *See Moody v. Johnson*, 139 F.3d 477, 484 (5th Cir. 1998).

Further, referring to Hodges's testifying at trial, the prosecutor argued that the "most damning thing isn't what you heard or what you saw, it's what you didn't see. . . . You didn't see remorse [from Hodges]. Not one tear. Not a quiver in his voice. Not an ounce of sincerity in his apology." A defendant's lack of remorse has also been construed as evidence of future dangerousness. *White v. Johnson*, 153 F.3d 197, 203 (5th Cir. 1998). In the same vein, the prosecutor argued that Hodges had received "a series of failed second chances." For example, the prosecutor reminded the jury that the victim of his prior burglary was the mother of the capital murder victim and that, during the previous burglary proceedings, she had requested that Hodges not be sentenced to prison. Three weeks after Hodges was released from custody in the burglary case, he committed the instant capital murder, killing her son and kidnapping her daughter. The prosecutor argued that although Hodges refused to acknowledge it during his testimony, he had been given "a second chance of monumental proportions" and a "huge measure of grace." Additionally, near the end of closing argument, the prosecutor stated as follows: "All I know is the good boy turned bad . . . . When you go back into that jury room, ladies and gentlemen, to reach that judgment consider this: He stands before you and asks you for a second chance. A second chance to do what to who and when and where?" The prosecutor was clearly attempting to persuade the jury to sentence Hodges to death so that he would not have a second chance to hurt someone. In other words, the prosecutor was again arguing that Hodges would be a future danger.

In light of the prosecutor's extensive reliance on the evidence of Hodges's future dangerousness, including "failed second chances" and two escapes while

10

in custody for the instant murder, we have grave doubt as to the harmlessness of this error.[7] We therefore conclude that erroneous instructions had substantial and injurious effect or influence in determining the jury's verdict.

Accordingly, for the above stated reasons, we affirm the district court's holding that because of the erroneous parole instructions, Hodges was denied a reliable sentencing hearing in violation of due process. Further, we conclude that the Mississippi Supreme Court's finding that such error was harmless was unreasonable.

---

[7] Although the jury did not send a note to the court inquiring about parole eligibility, the Supreme Court has expressly held it is not necessary for a jury to "manifest[ ] its confusion" on the record. *Kelly v. South Carolina*, 534 U.S. 246, 256 (2002).